Our next case this morning is Koplin v. Wisconsin Central. Good morning. My name is Rich Carlson and I represent Jeffrey Koplin, the plaintiff appellant in this case. We brought an FELA case, Federal Employer's Affiliate case, against his employer for injuries that he suffered in the winter of January of 2014 while throwing a track switch that failed to line or work as required. We're asking the district court to grant a summary judgment on both counts of our complaint. The first was a negligence claim and then the second was a negligence per se claim based on the violation of a FRA regulation that is contained in Part 213 of the FRA regulations. I do recognize that there is precluded by a second federal statute here, the Federal Railway Safety Act. The court recognized that Waymire was binding and dismissed the plaintiff's claim where we asserted negligent inspection and the regulation in question that the railroad pointed to as precluding the negligence claim deals with a required monthly inspection and there is no dispute that the railroad did not do that monthly inspection. But the plaintiff's claim is broader. It's not only negligent inspection, it's negligent maintenance. Now with respect to Waymire, we are asking- Did you make an argument about negligent maintenance in the district court? We did. We did set it out in our general duties that the railroad has and we specifically cited to that case and to the cases that require that. And then we also- and I will say we did not specifically argue that Waymire- we didn't even argue Waymire would preclude this case one way or the other. What we did argue was that Palm Wonderful now displaces Waymire. So we really didn't have that- we did not argue that to be quite specific. So counsel, on the Palm Wonderful point, are you saying that because Palm Wonderful engages in a certain kind of statutory interpretation of this preclusion claim that it sets forth an interpretive framework that's inconsistent with the framework employed in Waymire? We are. We are asked, yes. And specifically, Palm Wonderful sets out a preclusion analysis where Waymire certainly talks about preclusion and understands that this is not a preemption argument, yet it then goes and applies Easterwood, which is a Supreme Court case dealing with the question was whether the federal regulation covered the state-based negligence claim and it was an unsafe speed claim. So to answer the court's question about whether- is there any waiver of our claim now with respect to negligent inspection and maintenance? And I submit that there is no waiver because the court applied Waymire. And we certainly are allowed, as the appellant, then to discuss why Waymire does not apply, beyond just saying that Palm Wonderful now displaces Waymire. And the important part, turning to Palm Wonderful, the importance of that case is that it looks at a pure statutory interpretation. First, it looks at if there's any specific congressional intent, saying that one federal statute displaces another, there is none. Then the next question is whether the two statutes can be- can they be blended together? Are they inconsistent with each other? And the Seventh Circuit has specifically used a similar analysis in Brown, but that was looking at whether an ADA claim was preempted by a Railway Labor Act claim. And they did hold it was, but they did use a similar analysis that Palm Wonderful uses. Mr. Carlson, do we even need to get to that question? Does the underlying regulation in 213-235 even apply to the context here? The underlying regulation requires once monthly inspection on its face regarding defects in the tracks. And this claim seems to deal with the daily upkeep of tracks based on weather, essentially. Yes. So it seems like it is not the proper comparison. Well, Your Honor, if I understand your question, if you're talking about an issue of coverage, then I would agree that, even applying Wehmeyer here, you don't even have to say that Wehmeyer is no longer a good law, that Wehmeyer deals with coverage. And that was a very specific regulation with speed. I guess I'm even taking one step back from that. Does the regulation even apply here to your claims? So do we even need to go down the Wehmeyer-Palm route? It seems to cover different conduct than what the basis of your claim is. Well, I think I would like it to be so, but I think to be candid with the court, I do believe that that regulation with respect to monthly inspections would include inspecting of tracks and switches. But you've touched upon here, these are only minimum standards here. And the railroad, knowing that the very conditions that were faced by Mr. Copland, meaning blowing snow, freezing temperatures, that can cause a switch to malfunction. And so the railroad, again, these are only minimum standards. And a railroad may adopt more stringent rules, as long as they're not inconsistent with the FRA regulations. And in this case, they did. They said that because we know that these conditions can cause malfunctions, you as a conductor, and that's what Mr. Copland was, when he threw that switch, you must first inspect it. And then if it won't throw, then you are in charge with minor repairs. And our argument is that that gets into the negligent maintenance, and that also gets into how do you address that? It was known that this condition, there was knowledge, it was foreseeable. So how do you remedy that? Well, and Mr. Copland was a transportation employee, so he runs the trains. But doesn't that go to whether or not you have pled the elements of a field claim, as opposed to the preemption issue? It does, and I do believe we did plead those under the liberal plea. But my point is, is that that points out how much broader our negligence claims are than, so even if Wehmeyer applies, that regulation does not cover our negligence claim. I think the other important is that there's some concern about uniformity, that this will do away with uniformity. Palm Wonderful makes it clear that uniformity, when they speak to that in the FRSA, is talking about state action, because that is contained in the FRSA's preemption clause, and savings clause. Palm Wonderful recognizes that, so that it agrees that you don't want a patchwork of laws throughout the country. However, that deals with state action. It goes on to say that when you have two compatible federal statutes or laws, that there is some variance that judges and juries can reach applying that federal law, that still does not go against the uniformity part of it. The other part is that these regulations will not be held meaningless if the court holds that it's not precluded, or claims it's not precluded, because they set a minimum. Under the FVLA negligence claim, you must exercise reasonable care of railroad, given all the circumstances. The railroad could certainly bring a summary judgment motion, and say, look, we've complied with the minimum standards. There's no circumstances, there's no evidence showing that additional care needed to be taken. That does not render them meaningless. Now- Jody Do you agree that both of your claims here require causation for an element, including the negligence per se? Was Dr. Mejia the only expert you were offering on causation? Yes, he was. I do agree that both claims require causation. I know that the district court didn't reach it on the second claim, but yes. You offered, after his deposition where he said he couldn't opine on causation, you offered an affidavit in response to the summary judgment motion. In the interim, did you attempt to seek leave to amend his expert report to add these additional opinions, or did you just wait until summary judgment and come up with the affidavit? We did the latter. We did not move to amend. But as I set out in our- And when did you provide notice to the defendants that you were going to submit this affidavit? Did you give that to them in advance of the filing of the summary judgment motion, or wait until your response was due? It was simultaneous with our brief, with our submission in opposition. So, as set out in our brief- And how can that be fair, to wait on the causation issue after your expert has already taken one side, to wait until response to summary judgment to give essentially new evidence? Well, they certainly had- This is at the summary judgment juncture. They certainly had their own medical expert designated that was going to testify to a contrary opinion. But there was no contrary opinion that that expert needed to testify to. But I believe that could have been remedied. Any unfairness could have been remedied between the time if the motion would have been denied and the trial. But if the district court properly excluded your expert witness, then you cannot prevail, notwithstanding the Waymare issue and the notice issue, et cetera. Your Honor, I respectfully disagree. Both the experts agreed that there was a single trauma that caused medial epicondylitis. Your expert, Dr. Maysha, did not say that during his deposition. Maybe he said that in the affidavit. But in his deposition, he specifically said there could be other causes of this. This could just be wear and tear. There could be multiple potential ideologies of this. Your own expert said that. Well, I believe that that's after the August event. It's our position that between January and March, there was an injury and a disability there that everyone agrees with. But your expert did not agree with that. I understand there's a distinction. But your expert at his deposition, when he testified, did not distinguish between the January injury and the August injury, and in fact said that he had not looked at any possible causes of the injury from the January event. And I respectfully disagree. I believe that they were referring those questions were framed to post-MMI in March, or post the point where the plaintiff reached maximum medical improvement in March. During his deposition, he was asked, when you were treating Mr. Copeland back in April of 2015 through September of 2015, did you do anything to look at possible causes of his condition other than his work injury on January 24th? Answer, I did not investigate any further, no. And as we've just discussed, there could be other various causes of this type of a condition. Answer, yes. There was no differentiation between January and August. I don't dispute that, Your Honor. But at the very least, that the railroads expert testifies to an injury, again, an acute injury. But you can't piggyback on the defense expert if your own expert was properly excluded. It's your burden. And then also Dr. Schauffelberger, who I believe Dr. Mejia said he relied on for the his causation opinion, and Dr. Schauffelberger, and I believe I'm saying it correctly, did find a causal connection. The question was just whether this August... He wasn't deemed your expert, though, correct? Correct. And I would submit that our doctor, again, he can rely on those other medical opinions by a treating physician, another treating physician. And did Dr. Schauffelberger give an opinion, or was the testimony that he assumed it was from the injury? I believe his records state more than assume, but I will say that whatever the records say, the records say. All right. Thank you, Counselor. Your time has expired. Thank you, Mr. Hellenhaus. Good morning. May it please the Court. I want to briefly touch on a question that Judge St. Eve raised. The issue with Dr. Mejia could not be remedied in terms of prejudice to the judgment argument, and that ended it. So there was no time between that point and the... We were at the pretrial, so discovery was closed. We're done with it. Now getting to the... I want to first focus on Palm Wonderful. In August of 2018, in Ward versus Sulon Railroad Company, this circuit reaffirmed that FRA regulations set the federal standard of care. As such, if there is a violation of an FRA regulation, there is negligence per se. If the railroad, however, complies with the FRA regulation, then a FELA claim seeking a more stringent standard is precluded. Not only was this articulated in Waymire in the year 2000, back in 1937 in Atchison-Topeka and Santa Fe Railway versus Scarlet, the Supreme Court recognized that compliance with regulations issued by the Interstate Commerce Commission, who at the time regulated safety, precluded a claim by a railroad employer. In sole holding, the court noted, the railway company, having strictly complied with the regulation, has discharged its full duties so far as the latter requirement of the Safety Appliance Act is concerned. The judgment of the trial court and jury cannot be substituted for that of the commission. There were similar preclusion results in several early other cases, such as Woods v. New York West Railway, 346-0190, and Mahutka v. Minneapolis-St. Paul Railway, 234-NW-474. Thus, preclusion by federal safety regulation was law of the land when the FRSA was enacted in 1970. In fact, the FRSA itself, in section 2016, refers to the safety regulations as the federal standard of care. It does not say just for FRSA purposes. It says the federal standard of care, period. Congress, in contrast, did not give the FDCA regulations that were at issue in Fed Palm Wonderful such a designation. Not applying preclusion here would ignore Congress' recognition of the FRA regulations as the federal standard of care. What about the argument that plaintiff's negligent claim falls outside of the regulation at issue? That it falls outside of the monthly maintenance on defects in the tracks? There's two aspects to that. First, plaintiff failed to argue that he should have been provided different tools or more manpower at the district court level. Those have been waived. With respect to the maintenance, I think that's what you're getting to. Or the inspection of switches during incremental weather, something either broader or specific, depending on how you look at it. We believe that's precluded because there is no requirement that the switches be inspected more frequently than what is set forth in the FRA regulations. The railroads can choose to inspect it more carefully, but it does not have to on the federal regulations. The re is no obligation for a railroad to do anything beyond what the federal regulations have, nor can it be the basis of liability that the railroad failed to do something more than the federal regulations require. I'll give you an example. I think this was probably discussed a little bit in Easterwood, but there are some cases, and I can give you some citations when I get to it in here. This is an analogous preemption case where you have a train traveling below the standard set by the federal regulations, but higher than its internal violations. Suppose the internal standards say 40 miles per hour, the federal regulations say 60. There's an accident where the train's going 50. In those cases, there's still preemption, notwithstanding the fact that there was not compliance with the internal regulations of the railroad. Any iteration of a negligence inspection claim is precluded. Yes. With respect to the maintenance issues, the maintenance regulations require that if the railroad knows or has notice of a problem with the switch to either fix it or take it out of service, or they can operate over it under certain circumstances. The maintenance obligation depends, in the first instance, on an inspection which would provide it notice. As the court emphasized in Wehmeyer, Congress further directed in the FRSA that laws and regulations and orders related to railroad safety be nationally uniformed to the extent practicable. Wehmeyer recognized this congressional mandate for national uniformity in finding preclusion. National uniformity would be undermined without preclusion. Just as the Supreme Court explained back in 1937 in Scarlet, the judgment of the jury cannot be substituted for the judgment of the agency. Unlike jurors, the FRA is uniquely in better position to study railroad safety and to determine best safety practices for railroads with a larger view in mind. Moreover, by the time the FRSA was amended in 2007 to change some warning to address some Eighth Circuit cases involving complete preemption, Wehmeyer had already been decided seven years earlier, and several other cases had recently recognized, again, preclusion under the FRSA. In changing the language of the FRSA in 2007 then, Congress was thus aware of the existence of Wehmeyer and did nothing to overturn it. Given the historical context first in which the FRSA was enacted and amended, Congress' use of the federal standard of care as noted in the FRSA itself, in the expressed mandate for national uniformity, Wehmeyer remains good law even after Palm Wonderful. I want to switch to causation for a moment, please. Assuming the district court correctly struck the expert, given that this is a FELA case, was an expert needed to establish causation from the January 2014 injury? Yes, actually, I believe Myers was a FELA case, if I'm not mistaken, so yes. But Myers also says that there may be circumstances where an expert is not needed if the injury occurs from one event and there aren't other ideologies that might contribute to it. Right, all right. There's two points there. I think they may use a language where it's obvious to a layperson. Correct. This injury was not obvious to a layperson. I know the video was part of the record. Yes. I don't know if you saw the video. Yes. But there's no obvious, at least my interpretation of it, there's no obvious point where he holds his elbow or indicates pain or any indication. In fact, he didn't complain about it until about 40 minutes later. On top of that, you got his own expert saying, there's a bunch of other causes of this. So there has to be some determinant, and given that background, there has to be some expert testimony that this was the cause instead of a myriad of other possible causes. ICDA has never been used in this context, but I want to take a minute to talk about that. When I say ICDA, it's the ICC Termination Act. It's our position that ICDA precludes plaintiff's claim, and Congress specifically gave the STB exclusive jurisdiction over the operation of railroad tracks, and the statute on its face precludes other federal laws. We don't even have to worry about a POM wonderful analysis. Essentially, what appellant is arguing is that there should have been more crews out there, more maintenance workers, way beyond what the federal regulations require. That's the sort of micromanagement that the business of railroading, which is what STB regulates, which ICDA was designed to prevent. I know it's in a different context than ICDA has predominantly been applied, but I think it could be applicable here. Also, I want to talk about the notice issue a little bit. We believe the court correctly granted summary judgment on count two because there was no notice of a track regulation violation. In enacting the regulations, the FRA specifically noted that for there to be a violation, the railroad must know or have notice of noncompliance. In other words, without notice, there is no violation. This notice requirement is unique to the track safety regulations. It doesn't apply to locomotive regulations. It doesn't apply to rail car regulations or the other railroad regulations. Under this notice requirement, the railroad cannot possibly be responsible for all the switches at any given time when those issues are constantly changing and are subject to vagaries in weather, geography, vandalism, and effects of trains going over the tracks. There's no dispute that there was no actual notice here. Do you agree that there was a technical violation there and you're just disputing notice or are you disputing both? I'm disputing both. It was unclear from the record. There cannot be a violation without notice, would be my first answer. Second, in terms of the switch alignment regulation, which I believe was... Yes, 213.125B. Yes. It's our interpretation that that regulation is not violated unless a train operates over it. I mean, the fact that that exists in a vacuum somewhere is not a problem. The problem is if a train attempts to operate over it. In this case, a train did not attempt to operate over that. We know from the cases that have looked at the notice requirement that there's actual notice and then there's some other sort of notice. The FRA regulations and the history just says notice. The standard in Harris versus Norfolk Southern provides a framework of when notice could possibly be imputed. There the court noted that if an inspection was negligently done and as such did not reveal an existing problem with the switch, the railroad may be deemed to have notice. In contrast, there is no dispute here that the 30-day inspection required by the regulations was properly done. Moreover, the switch had been properly operated several times since that inspection and trains had moved over that switch in both directions several times and trains had been through there on the date of the incident. And let me add one more thing on the weather because I think, Judge St. Eve, you mentioned something about the weather. This was a normal Wisconsin snowy day. This is not a hurricane, a blizzard that is crazy or something. And I don't think this panel needs to get into the extreme weather circumstances. There's no evidence that this was an extreme weather involvement that caused any problem here. One thing I'll honestly struggle with is whether this case even implicates Palm Wonderful at all because our argument is that the FRSA, at the time the FRSA was passed, it was contemplated that that would be the standard here in the Fela cases because that had been the law of the land for several years. So I don't think there's any inconsistency with Palm Wonderful. But even if you apply, if you need to find that there's an inconsistency in whether preclusion should apply and you go through the Credit Suisse analysis, I think the result of preclusion is the only logical result is the same. Each of the factors under that Credit Suisse test to be used in determining when one federal statute is incompatible with another favors a finding of preclusion. Here, the FRA first has statutory authority to regulate rail safety standards. Second, the FRA has exercised that authority. Third, the subject matter of the railroad safety falls squarely within the zone of activity that the FRA seeks to regulate. And fourth, absent a finding of preclusion, there is a real risk that railroads would be subject to conflict of duties and standards of care. Is it really a preclusion or a question of preclusion or just that the Railway Safety Act or Railroad Safety Act provides the standard of care for a FELA claim, sounding in negligence per se, and there's a failure of proof because the legal standard was complied with? Well, and that's what I'm struggling with. And I think either way, the result's the same. But the way I personally would interpret it, I think our first and foremost argument is that it's really not a preclusion argument. It sets forth the standard of care. That's what's used in the FRSA. That's not what was used in the FDCA. I mean, that's a very peculiar phrase, the federal standard of care to be used. So it's our contention that there is no really conflict. It's not a preclusion analysis at all. It's what sets the duty. And in fact, if you look back, if there's a violation of the duty, conversely, there's a violation of the federal standard of care, and there's per se negligence. So I think it should work both ways. If you're going to have a violation, and that's the standard of care for violation, then compliance should be the standard of care that the railroad has satisfied. Thank you. Thank you. Mr. Carlson, you were out of time, but you can have one minute in rebuttal if you have anything you'd like to say to wrap up your argument. Sure. With respect to the testimony of causation, I just point to document 14-19 at page 5. That's what we cited to our brief with respect to Dr. Schaufelberger's opinion on causation. With respect to the 2000 Amendment to the Federal Railway Safety Act, that dealt with state action, that dealt with Minot derailment, and what was the extent of the state preclusion clause of that statute. And what they're arguing is a negative preemption, that because the Congress could have acted on it, saying that there was an effect on FELA, but they didn't, that shows preemption. That's a negative preemption argument, and I submit that that is not applicable here. With respect to the ICCTA argument, look at our reply brief. What they're saying is that any time a railroad has to do something to prevent an injury, exercising recall care, that somehow infringes on their economic interest. That's just an absurd result. So we would respectfully ask that the court reverse summary judgment and remand the case for further proceedings below. Thank you. All right, thank you. Our thanks to all counsel. The case is taken under advisement.